**Adam MUKERJI and City of Reading**

v.

**CITY OF READING CHARTER REVIEW BOARD,**
**Appellant**

**Adam Mukerji and City of Reading, Appellant**

v.

**City of Reading Charter Review Board.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2007.
Decided Jan. 18, 2008.

Eric B. Smith, Norristown, for designated appellant, City of Reading Charter Review Board.

Steven K. Ludwig, Philadelphia, for designated appellees, Adam Mukerji and City of Reading.

BEFORE: LEADBETTER, President Judge, and FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

The City of Reading Charter Review Board (Board) appeals from that portion of the March 26, 2007, order of the Court of Common Pleas of Berks County (trial court) declaring the Board's suspension and termination of Adam Mukerji's (Mukerji) employment to be invalid and unenforceable. Mukerji and the City of Reading (City) appeal from that portion of the order declaring the Board's imposition of administrative fines and penalties against Mukerji to be valid and enforceable. We affirm in part and reverse in part.

On January 6, 2006, a resident of the City filed a complaint with the Board, alleging that Mukerji, head of the Department of Community Development, was violating section 706 of the City's Home Rule Charter (Charter), which requires that the heads of departments be residents of the City.[1] Following an investigation, the Board found that the City hired Mukerji as Director of Community Development in the late summer or early fall of 2002 and that Mukerji never complied with the residency requirement in section 706 of the Charter. (Board's Findings of Fact, Nos. 1–5, 9–10.)

On June 15, 2006, the Mayor signed into law Bill No. 46–2006, which amended section 1–189 of the City's Administrative Code by deleting references to the Department of Community Development and creating the position of Economic Development Manager. The Economic Development Manager is head of the Office of Community Development and reports directly to the City's Managing Director, like the former department head. Moreover, he or she has the same duties, salary, responsibilities, office location and staff as the former department head. One of the purposes of Bill No. 46–2006 was to make Mukerji compliant with the Charter's residency requirement; thus, the City hired Mukerji as Economic Development Manager. The new position did not represent a demotion for Mukerji; it was only a change in title. Indeed, Mukerji remained at the same level as department heads. On April 12, 2006, the Board issued Advisory Opinion No. 1, stating that the City's Economic Development Manager was subject to the Charter's residency

---

1. Section 706 of the Charter states that all "heads of departments, offices and agencies need not be residents of the City at the time of appointment, but after appointment shall re-side in the City. City residency shall be required within twelve (12) months of being appointed." (R.R. at 204a.)

requirement. (Board's Findings of Fact, Nos. 11–19, 21–23.)

On June 28, 2006, the Board conducted an evidentiary hearing on the complaint. After considering the evidence presented, the Board concluded that: (1) Mukerji violated section 706 of the Charter by maintaining his residency outside the City; (2) after June 15, 2006, when Mukerji became the Economic Development Manager, he continued to be subject to section 706 because he was the head of the Office of Community Development; and (3) the Mayor and Managing Director actively undermined the Charter by failing to enforce section 706 of the Charter after the Board opined that the City's Economic Development Manager is subject to the residency requirement. The Board issued a public censure of Mukerji, imposed a $1,000 administrative fine and a $1,000 penalty upon Mukerji,[2] suspended Mukerji for thirty days without pay and directed that Mukerji comply with section 706 within specified timeframes or face termination of his employment. (R.R. at 166a–67a.)

Mukerji and the City appealed to the trial court, and the Board filed a motion to enforce its order. In deciding the matter, the trial court declared that the Board's imposition of the administrative fine and penalty is valid and enforceable, but that the Board's suspension and termination of Mukerji's employment is invalid and unenforceable. As for the latter, the trial court explained that: (1) the Mayor and Managing Director have exclusive authority under the Charter to suspend or terminate employment; (2) although the Board has authority to suspend or terminate employment under the Administrative Code, those provisions are unenforceable; and (3) the Board needs to file a mandamus action to compel the Mayor and Managing Director to suspend or terminate Mukerji for violating the residency requirement. Because of its ruling that the Mayor and Managing Director have exclusive authority to suspend or terminate employment, the trial court did not address whether the Board could compel suspension or termination of Mukerji's employment as Economic Development Manager, believing that the Mayor and Managing Director would be indispensable parties with respect to that issue. (See R.R. at 757a.)

Mukerji and the City appeal from that portion of the order ruling that the Board's imposition of an administrative fine and penalty is valid and enforceable. The Board appeals from that portion of the order ruling that the Board's suspension and termination of Mukerji's employment is invalid and unenforceable.[3]

## I. Appeal of the Board

### A. Economic Development Manager

■ Initially, the Board argues that it correctly determined that the Economic Development Manager is subject to the residency requirement.[4] We agree.

---

**2.** Section 1–599.25(2)(B)(1)(b)(6) of the City's Administrative Code states that the Board may impose a fine not to exceed $1,000 per violation. (R.R. at 579a.) Section 1–599.25(2)(B)(1)(b)(7) of the Administrative Code states that the Board may impose an administrative fine of not more than $1,000 to defray the actual cost and expense of investigating any violation. (R.R. at 579a.)

**3.** Where the local agency developed a full and complete record and the trial court took no additional evidence, our scope of review is limited to whether the local agency violated constitutional rights or committed an error of law or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 754(b); *Siteman v. City of Allentown*, 695 A.2d 888 (Pa.Cmwlth.), *appeal denied*, 550 Pa. 674, 703 A.2d 469 (1997).

**4.** As indicated above, the trial court did not rule on this issue because it concluded that the Mayor and Managing Director have exclu-

Section 706 of the Charter requires that heads of departments **and offices** be residents of the City. The Board found that the Economic Development Manager is the head of the Office of Community Development, is at a department head level and has the same duties, salary, responsibilities, office location and staff as the former head of the Department of Community Development.[5] In fact, the City's Managing Director admitted that the City's motivation in creating the Economic Development Manager title for Mukerji was, at least in part, to help Mukerji avoid the residency requirement. (R.R. at 60a–61a.) In this regard, if the City could help Mukerji avoid the residency requirement simply by changing his title, the City could give new titles to all department heads so that no one in a high level position with the City would have to be a City resident. Clearly, this would violate the Charter.

### B. Authority to Suspend/Terminate

The Board next argues that it correctly determined that it has authority to suspend and terminate employment under sections 1–599.25(2)(B)(1)(b)(3) and (4) of the City's Administrative Code. We agree.

#### 1. Administrative Code Provisions

Section 1–599.25(2)(B)(1)(b)(3) of the Administrative Code states that the Board may impose a penalty of suspension for a

violation of the Charter, with notification to the respondent, the Mayor, the Managing Director, the Director of the Department in which the respondent is employed, if any, and the complainant, if any. Section 1–599.25(2)(B)(1)(b)(4) of the Administrative Code states that the Board may impose a penalty of termination, with the same notifications. (R.R. at 578a–79a.) Thus, clearly, the Administrative Code gives the Board authority to impose a penalty of suspension or termination from employment for violations of the Charter.

The trial court ruled that these provisions were unenforceable because the **Charter** does not give the Board specific authority to suspend or terminate employment. However, the Charter gives the Board authority to impose penalties, and section 2(c) of Amendment 1 of the Charter gives the City Council authority to enact an ordinance "to provide penalties and other enforcement mechanisms" for the Board. (R.R. at 179a–80a.) Here, pursuant to the Charter, **not** contrary to the Charter, the City Council enacted sections 1–599.25(2)(B)(1)(b)(3) and (4) of the Administrative Code, providing for the Board's use of the penalties of suspension and termination from employment.[6]

#### 2. Sections 603 and 406 of the Charter

█ The trial court also ruled that the Administrative Code provisions were unen-

---

sive authority to suspend or terminate employment and, thus, would be indispensable parties. However, as set forth below, the Mayor and Managing Director do **not** have exclusive authority to suspend or terminate employment. Thus, the trial court erred in failing to consider the matter.

5. We also note that the position of Economic Development Manager is found in section 1–189 of the Administrative Code, which is within Part 1(H) of the Administrative Code, relating to "**Department Organization.**" (R.R. at 271a) (emphasis added).

6. Having concluded that the Board has legal authority through section 2(c) of Amendment 1 of the Charter and through sections 1–599.25(2)(B)(1)(b)(3) and (4) of the Administrative Code to suspend and terminate employment for a violation of the Charter, we conclude that it is not necessary for the Board to file a mandamus action to compel the Mayor and/or City Council to enforce the Charter's residency provisions.

forceable because sections 603 and 406 of the Charter give the Mayor and the Managing Director **exclusive** authority to suspend or terminate employees. However, section 603(a) of the Charter states, "**Except as otherwise provided** by this Charter, the ... Mayor shall appoint and remove the head of any department, office or agency." (R.R. at 200a) (emphasis added). Section 406(3) of the Charter states that the Managing Director shall "suspend, or remove any City employee, **except as otherwise provided** by this Charter or by law." (R.R. at 196a) (emphasis added). Such language does **not** give the Mayor and Managing Director **exclusive** authority to suspend or terminate employment.

### 3. *Eppihimer*

In concluding that sections 603 and 406 of the Charter give the Mayor and Managing Director **exclusive** authority to suspend and terminate employment, the trial court relied upon *City Council of the City of Reading v. Eppihimer*, 835 A.2d 883 (Pa.Cmwlth.2003). In *Eppihimer*, this court considered whether City Council has authority under the Charter to hire and fire its Chief of Staff and Legislative Coordinator **or** whether the Mayor and Managing Director have exclusive authority to hire and fire all non-exempt career service employees. This court concluded that the Mayor and Managing Director are ultimately responsible for carrying out the merit personnel system governing non-exempt career service employees. *Id.* For several reasons, *Eppihimer* does not apply here.

First, we have concluded that, in this case, the Economic Development Manager is head of an office that reports directly to the Managing Director. Under section 702(a) of the Charter, heads of offices under the immediate direction and supervision of the Managing Director are mem-

bers of the exempt service. (R.R. at 202a.) *Eppihimer* involved the authority of the Mayor and Managing Director over the non-exempt career service, **not** the exempt service.

Second, in *Eppihimer*, this court considered only whether, in addition to the Mayor and Managing Director, **City Council** has authority under the Charter to hire and fire City Council's Chief of Staff and Legislative Coordinator. This court did **not** address whether, in addition to the Mayor and Managing Director, the **Board** has authority to suspend or terminate employment for violations of the Charter. The Board's authority under the Charter is different from the City Council's authority.

Third, in *Eppihimer*, this court interpreted the Charter as it existed prior to the amendment creating the Board. Indeed, the City Council positions at issue in *Eppihimer* were created in 2001 and funded in 2002. *Eppihimer*. The Board was created by Amendment 1 to the Charter, which had an effective date in 2003. (R.R. at 181a.) Thus, this court's interpretation of the Charter in *Eppihimer* did not involve any of the Charter provisions relating to the Board.

## II. Appeal of Mukerji and the City

Mukerji and the City argue that the Board's imposition of fines was void because the Board never promulgated rules and regulations establishing the procedure and standards for the imposition of fines. We disagree.

Section 1–599.23(1) of the Administrative Code states that the Board shall adopt rules and regulations to administer, implement, enforce and interpret the provisions of the Administrative Code that relate to the Board. (R.R. at 570a–71a.) This provision does **not** specifically require that the Board adopt rules and regulations estab-

lishing a procedure and standards for the imposition of fines.[7] Indeed, there is no need for the Board to adopt rules and regulations to establish a procedure and standards for the imposition of fines because City Council already established the procedure and standards in section 1–599.25 of the Administrative Code.[8]

The procedure, set forth in section 1–599.25(1) of the Administrative Code, includes: (1) the filing of a complaint; (2) a preliminary review for jurisdiction; (3) a preliminary investigation; (4) a full investigation; (5) a findings report; (6) an evidentiary hearing; (7) a final decision; and (8) a right to appeal. (Section 1–599.25(1)(A) to (I), R.R. at 572a–76a.) With respect to the evidentiary hearing, it is recorded, and the formal rules of evidence do not apply. The subject of the complaint has the right to be represented by counsel, to subpoena witnesses, to present evidence, to cross-examine witnesses and to submit argument. The parties may make opening statements, after which the investigator presents his or her case. The subject of the complaint then presents his or her case, and the parties make closing statements. (Section 1–599.25(1)(G)(2), R.R. at 575a–76a.) Thus, clearly, this is not a case where the Board needed to adopt rules and regulations in order to have a procedure to follow for the imposition of fines.

The standard for the imposition of fines is set forth in section 1–599.25(2) of the Administrative Code. That provision lists multiple factors to be considered before the imposition of any penalty: (1) the seriousness of the offense; (2) the substantive effect the offense has on the application of the Charter and its purposes; (3) whether the subject of the complaint has had previous decisions entered against him or her by the Board; (4) the number of violations involved; (5) whether the violations were the result of willful or intentional conduct, recklessness, negligence, oversight or mistake; (6) consequences of the violation; (7) whether the conduct violates any other law; and (8) any other factors relevant in determining the type and severity of the penalty to be imposed.[9] (Section 1–599.25(2)(B)(1)(a), R.R. at 578a; see also R.R. at 243a.) Thus, this is not a case where the Board needed to adopt rules

7. *See Derry Township School District v. Commonwealth*, 65 Pa.Cmwlth. 188, 442 A.2d 32 (1982) (holding that a statutory provision requiring that the State Board of Education adopt rules and regulations did not specifically require that it adopt rules and regulations relating to the withdrawal of community college sponsorship).

8. Under section 2(c) of Amendment 1 to the Charter, "City Council shall, by ordinance, adopt regulations implementing this Section. Such ordinance shall provide penalties . . . as well as procedures by which the Charter Board shall operate in accordance with Local Agency and other applicable law." (R.R. at 180a.)

9. The Board imposed a fine based on the following factors: (1) the violation occurred over three years; (2) this involves nearly 1,000 separate daily violations; (3) the violation was willful and intentional; (4) it was not the result of mere oversight or mistake; (5) the violation threatens to weaken the Charter and the City and would provide an untenable precedent for other heads of departments, offices and agencies; and (6) Mukerji failed to comply with the Board's Advisory Opinion No. 1. (R.R. at 168a.)

Mukerji and the City argue that the Board failed to consider two of the factors set forth in the ordinance. However, Mukerji and the City do not set forth this issue in the Statement of Questions Involved portion of their brief; thus, the matter is waived. *See* Pa. R.A.P. 2116(a) (stating that, ordinarily, no point will be considered which is not set forth in the statement of questions involved or suggested thereby).

and regulations establishing standards for the imposition of fines.

■ Accordingly, we affirm the trial court's order to the extent it declares the Board's imposition of an administrative fine and penalty to be valid and enforceable. We reverse to the extent the order declares the Board's suspension and termination of Mukerji's employment to be invalid and unenforceable. We also affirm the Board's determination that the City's Economic Development Manager is subject to the Charter's residency requirement.

### ORDER

AND NOW, this 18th day of January, 2008, the order of the Court of Common Pleas of Berks County, dated March 26, 2007, is hereby affirmed to the extent it declares the imposition of an administrative fine and penalty upon Adam Mukerji by the City of Reading Charter Review Board (Board) to be valid and enforceable. The order is reversed to the extent it declares the Board's suspension and termination of Adam Mukerji's employment to be invalid and unenforceable. In addition, we affirm the Board's determination that the City's Economic Development Manager is subject to the Home Rule Charter's residency requirement.